BEAM, Circuit Judge.
Kent Bernbeck brought claims under 42 U.S.C. § 1983 against two public officials in their official capacities, alleging that the procedures they enforce for placing initia *645 tives on Nebraska state and municipal ballots violate Ms rights under the First and Fourteenth Amendments to the Constitution of the United States, and seeking declaratory and prospective injunctive relief. The district court dismissed all but the Fourteenth Amendment claim against Nebraska Secretary of State John Gale, entered judgment for Bernbeck on that claim, enjoined Gale from enforcing certain provisions of the Nebraska Constitution, and awarded Bernbeck attorneys’ fees and costs. Gale appeals from both the judgment and the award of attorneys’ fees. Because Bernbeck does not possess standing to bring his Fourteenth Amendment claim against Gale, we now vacate in part and remand with instructions to dismiss without prejudice.
I. BACKGROUND
Article III § 2 of the Nebraska Constitution provides in relevant part:
The first power reserved by the people is the initiative whereby laws may be enacted and constitutional amendments adopted by the people independently of the Legislature. This power may be invoked by petition wherein the proposed measure shall be set forth at length. If the petition be for the enactment of a law, it shall be signed by seven percent of the registered voters of the state, and if the petition be for the amendment of the Constitution, the petition therefor shall be signed by ten percent of such registered voters. In all cases the registered voters signing such petition shall be so distributed as to include five percent of the registered voters of each of two-fifths of the counties of the state, and when thus signed, the petition shall be filed with the Secretary of State who shall submit the measure thus proposed to the electors of the state ....
Until 1994, Article III § 4 of the Nebraska Constitution required that the number of petition signatures needed to satisfy § 2 be calculated as a percentage of the total number of voters that participated in the immediately preceding gubernatorial election. In Duggan v. Beermann, 245 Neb. 907, 515 N.W.2d 788 (1994), however, the Nebraska Supreme Court held that this requirement had been impliedly repealed by an earlier amendment to § 2 and that the required number of petition signatures should instead be calculated as a percentage of total registered voters in the state at the time the petition is filed with the Secretary of State. The practical effect of this decision, in Bernbeck’s opinion, was to greatly increase the number of petition signatures needed to place an initiative on the statewide ballot.
Bernbeck, a resident of Douglas County, Nebraska, is a frequent participant in Nebraska’s initiative process, having sponsored or cosponsored five statewide initiative petitions and having provided consultation or assistance on four others. Unhappy with the increased burden Dug-gan placed upon his efforts, Bernbeck filed two sworn statements with Gale — in January 2012 and again in July — that he was sponsoring a petition drive to amend the Nebraska Constitution to return the petition-signature thresholds for ballot initiatives to their pre-Duggan levels. His July filing also included a sample petition form. Bernbeck stipulated that he never filed a signed petition with Gale, and the record contains no clear indication that he ever went about collecting signatures for that initiative.
Around the same time, Bernbeck circulated petitions in various Nebraska cities and towns for placement of an initiative on their respective municipal ballots. Although the stipulated record on which this case was decided does not specify the ob *646 jective of this initiative, Bernbeck’s complaint alleges it proposed “an ordinance to require associations receiving municipal funds to disclose and publish in a local newspaper of record, all activity taken to influence the Nebraska Legislature, including support and/or opposition to municipal and statewide ballot measures.” The Village of Denton, Nebraska, refused to place Bernbeck’s initiative on the ballot because he paid petition circulators by the signature in then-contravention of Nebraska law. See Neb. Rev. Stat. § 32-630(3)(g) (Reissue 2008 & Cum. Supp. 2014) (repealed 2015). That dispute was fully litigated in Nebraska state court.
Bernbeck brought claims under § 1983 against both Gale and Charlotte TeBrink, clerk of the Village of Denton. Bernbeck alleged that Gale’s enforcement of the Nebraska Constitution’s “signature-distribution” requirement for initiatives — that an initiative petition contain signatures of at least 5% of the registered voters of each of two-fifths of Nebraska’s counties in order to be placed on the statewide ballot— violated his rights under the First Amendment (incorporated through the Fourteenth) to political expression and to petition the government, as well as his voting rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. He also alleged TeBrink’s enforcement of the paid-circulator prohibition violated his First Amendment rights. The district court found Bernbeck’s claims against TeBrink precluded by the previous state-court litigation and dismissed his First Amendment claims against Gale. The district court concluded, however, that the signature-distribution requirement diluted Bernbeck’s right to vote in violation of the Fourteenth Amendment. It enjoined Gale from enforcing the relevant provisions of §§ 2 and 4 of the Nebraska Constitution and awarded Bernbeck attorneys’ fees and costs. Gale appeals, arguing the district court erred both in its decision and its calculation of attorneys’ fees.
II. DISCUSSION
Standing, although not raised by the parties on this appeal, is a “jurisdictional prerequisite” and thus “a threshold issue that we are obligated to scrutinize,” sua sponte if need be. Curtis Lumber Co. v. La. Pac. Corp., 618 F.3d 762, 770 & n.2 (8th Cir. 2010) (first passage quoting Medalie v. Bayer Corp., 510 F.3d 828, 829 (8th Cir. 2007)). This is because “[j]udicial power to review the legality of official action exists only as an incident of the duty to determine the law applicable to a case properly before the court.” 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531.1 (3d ed. 2008). We review a party’s standing de novo. Curtis Lumber, 618 F.3d at 770. Standing requires that in order
[t]o seek injunctive relief, a plaintiff must show that he is under threat of suffering “injury in fact” that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.
Summers v. Earth Island Inst., 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009). Because these requirements are “an indispensable part of the plaintiffs case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, ie., with the manner and degree of evidence required at the successive stages of the litigation.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). This case comes to us at the conclusion of a bench trial, and so *647 we look to see that Bernbeck has proven the elements of standing by .a preponderance of the evidence.
Bernbeck’s Fourteenth Amendment claim against Gale rests on the allegation that the signature-distribution requirement burdens his rights by placing attenuated value and influence upon the signatures of each voter from a highly populated county as compared with the signatures of each voter from a less populated county. Nebraska is a largely rural state and, according to stipulated figures taken from a U.S. Census Bureau estimate, in 2012 Douglas County — home to Omaha — encompassed roughly 28.7% of Nebraska’s total population, which is spread across 98 counties. Thus, according to Bernbeck, the signature of a voter in a rural county on an initiative petition goes further in reaching the target of 5% of that county’s registered voters than does the signature of a voter who resides in Douglas County. Bernbeck’s complaint can fairly be read as claiming that this disparity invades two distinct interests of his: (1) it burdens his “individual voice and vote as a petition circu-lator” and (2) it “makes his vote less meaningful than the vote of any other Nebraska voter in any other Nebraska county.” Read generously, .Bernbeck in short claims both an interest as a petition circulator[1] in putting his initiative onto the statewide ballot and an interest as one who signs an initiative petition in parity between his signature and those of Nebraskans residing in other counties. Cf. Roberts v. Wamser, 883 F.2d 617, 622 (8th Cir. 1989) (discussing divergent interests of candidates and voters). We address each of these interests in turn.
A. Bernbeck’s Interest in Placing an Initiative on the Ballot
Bernbeck alleges in his complaint that the signature-distribution requirement violates the one-man-one-vote principle applied to state legislative elections announced in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), “because it prevents an initiative petition issue from reaching the voters of Nebraska” despite meeting § 2’s other requirements. Putting aside the merits of this contention, Bernbeck essentially claims injury from Gale’s enforcement of the signature-distribution requirement. Certainly Bernbeck has not proven that this injury is actual. It is undisputed that Bernbeck never submitted a signed petition, and so it is not possible for Gale to have enforced the signature-distribution requirement by rejecting a submitted petition for noncompliance.[2] The only sense in which Bernbeck can be said to have been injured, then, is imminently. The district court found that Bernbeck was injured because “[h]e has a specific initiative he wishes to undertake at this time.” We conclude that this wish, even if evidenced by a sworn statement and sample petition filed with Gale, is insufficient to establish an imminent threat of enforcement.
As the Supreme Court made clear in Lujan, a wish to engage in future conduct, alone, does not provide the imme *648 diacy needed for threatened enforcement of a contested law to constitute injury in fact. 504 U.S. at 564 n.2, 112 S.Ct. 2130. The concept of immediacy is
stretched beyond the breaking point when, as here, the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff’s own control. In such circumstances we have insisted that the injury proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all.
Id. (emphasis added). Bernbeck’s claim rests on a desire to engage in future conduct at an unspecified and indefinite time,[3] and the acts necessary to bring his injury into existence are entirely within his control. The high degree of immediacy he must prove cannot, it seems to us, be met by a mere statement of intent. This conclusion comports with our precedent. “[I]f a plaintiff is required to meet a precondition or follow a certain procedure to engage in an activity or enjoy-a benefit and fails to attempt to do so, that plaintiff lacks standing to sue because he or she should have at least taken steps to attempt to satisfy the precondition.” Pucket v. Hot Springs Sch. Dist. No. 23-2, 526 F.3d 1151, 1161 (8th Cir. 2008); see also Constitution Party of S.D. v. Nelson, 730 F.Supp.2d 992, 998-99 (D.S.D. 2010) (finding plaintiff who did not “even attempt to comply with” challenged signature threshold lacked standing), vacated in part on other grounds, 639 F.3d 417 (8th Cir. 2011). This is not a situation where an attempt to comply with a challenged requirement would have been futile. At oral argument, counsel suggested Bernbeck possessed standing because his attempt to place his petition on the statewide ballot was effected through the municipal petition drives, which were an attempt to change the municipal initiative and referendum process “as a way to try and get attention to his issue.” We fail to see the connection between these municipal drives, which as far as we can ascertain from Bernbeck’s complaint pertain to fiscal disclosure, and his efforts to repeal Dug-gan. And in any event § 2 does not apply to municipal initiatives. See City of North Platte v. Tilgner, 282 Neb. 328,803 N.W.2d 469, 486 (2011). Bernbeck offers no persuasive justification for his foregoing entirely the very procedure he asks us to review.[4]
*650 B. Bernbeck’s Interest as a Petition Signer
The only other plausible basis on which Bernbeck can claim to have been injured is in his interest as a resident of Omaha in parity between his petition signature and those of registered voters in other counties. But Bernbeck must be able to point to some evidence in the record that he possesses this interest. The right to have one’s signature counted on a petition extends only to those registered to vote in Nebraska. Neb. Rev. Stat. § 32-1404. Nowhere in the complaint nor in the record can we find any averment or evidence that Bernbeck is registered to vote. Cf. Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (finding standing to challenge apportionment statute where appellants were “allegedly qualified to vote”). Therefore he has failed to prove he has standing to assert this interest as well.[5]
III. CONCLUSION
Because we conclude Bernbeck does not possess standing to bring his Fourteenth Amendment claim, we are without authority to do anything but vacate that portion of the district court’s judgment and remand with instructions to dismiss that claim without prejudice.[6]

. It would be more accurate to say that Bern-beck is a petition "sponsor,” as there is no record evidence that he circulated any petitions for the placement of an initiative on the statewide ballot.

. Of course any past rejection of petitions cannot support the existence of an injury in the present case; "[pjast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.” Lujan, 504 U.S. at 564, 112 S.Ct. 2130 (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)).

. At the time he submitted his statement and sample petition form on July 23, 2012, Bern-beck had until July 4, 2014, to submit signed petition forms to Gale in order to place that issue on the ballot. See Neb. Rev. Stat. §§ 32-1405(1), -1407(1), (2); see also Neb. Const. art. XVII § 4 (defining "general election”). Bernbeck has at most proven an intent to submit signed petition forms at an unspecified time, and acting on that intent could only have given rise to his claimed interest within a roughly two-year period. We understand Lujan to require a greater degree of definiteness than this. 504 U.S. at 564, 112 S.Ct. 2130 (“Such ’some day’ intentions — without any description of concrete plans, or indeed even any specification of when the some day will be — do not support a finding of the 'actual or imminent' injury that our cases require.”).

. The dissent relies on cases that center on a claimed violation of the fundamental right to vote in an election of political representatives. Bernbeck, instead, claims an invasion of his state-created right to participate in initiatives and referenda, a right which courts have consistently recognized is not provided by the United States Constitution. See Dobrovolny v. Moore, 126 F.3d 1111, 1113 (8th Cir. 1997) ("[T]he right to a state initiative process is not a right guaranteed by the United States Constitution, but is a right created by state law.”); Kendall v. Balcerzak, 650 F.3d 515, 522-23 (4th Cir. 2011); Save Palisade FruitLands v. Todd, 279 F.3d 1204, 1210-11 (10th Cir. 2002); Taxpayers United for Assessment Cuts v. Austin, 994 F.2d 291, 296 (6th Cir. 1993). Indeed, the state retains the authority to interpret the scope and availability of any such state-conferred right or interest, not the feder *649 al courts. "Although standing in no way depends on the merits of the plaintiff’s contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted.” Warth v. Seldin, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (citation omitted). What may constitute the invasion of a deeply fundamental, constitutionally recognized right to vote cannot be assumed to apply interchangeably with the state-created, nonfundamental right to participate in initiatives and referenda. We have yet to find a case involving that right where the state did not first enforce the challenged restriction.
This distinction also highlights the tenuous nature of Bernbeck's equal protection claim, were we to reach the merits. But even without analysis of the merits of the equal protection argument, it is clear that none of Bernbeck’s claims are tethered to any constitutional mandates found in Section 2 of Amendment 14 of the United States Constitution. On the other hand, as previously indicated, a significant number of the dissent’s case precedent presents direct connection to one or more of the specifically alluded to protective edicts found in Section 2. Accordingly, it is virtually certain that Bernbeck fails to state an actionable equal protection claim in this case. And it is equally clear that if he could have stated an equal protection cause of action, the required rational basis analysis would have doomed any such claim.
The dissent also focuses on Bernbeck’s claimed injury from the cost and effort of traveling the state collecting signatures. But this economic injury relates to Bernbeck’s First Amendment claim — that his right to engage in political expression and association through the initiative process is unduly burdened by obstacles that restrict his ability to place his initiative on the ballot. We are reviewing only the district court's judgment on his right-to-vote claim anchored to the Equal Protection Clause, which is grounded on his alleged right to have signatures equally valued. Bernbeck neither alleged nor argued that Nebraska has disparately imposed the burdens of collecting signatures. "[A] plaintiff must demonstrate standing for each claim he seeks to press.” Davis v. FEC, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006)). The relevant injury for our purposes is the one which Bernbeck claims violates the Equal Protection Clause — that the signature-distribution requirement “dilutes, cheapens and debilitates a plaintiff’s individual voice and vote as a petition circulator”— and nothing more. Bernbeck did not collect and submit a single signature for the initiative at issue, so he has not presented evidence that any signature was "dilute[d], cheapen[ed] [or] debilitate[d].”
As to the dissent’s argument that Bernbeck has presented evidence proving submission of the petition from Bernbeck's January 2012 filing would have been futile, we read his declaration differently. It is true Bernbeck declared that "[a]s of the July 2012 signature deadline, we failed to meet the distribution requirements and the signature threshold for our constitutional amendment to be placed on the November 2012 ballot.” But rather than infer from this statement an attempt to gather petition signatures to satisfy the signature-distribution requirement, we look instead to the following four subparagraphs in the declaration in which Bernbeck specifies the efforts he undertook. The first three relate his difficulties in hiring petition circulators because of his inability to pay them by the signature. He does reference gathering signatures, but only for the limited purpose of gathering samples to "test participation rates, signature validity rates and number collected per hour” in order to calculate an hourly rate for signature gatherers. The fourth subpara-graph describes an effort to collect signatures to meet the signature-distribution requirement, but it is entirely unclear whether Bern-beck is referring to his own petition, that of Sharon Crachey, a sponsor of a separate but similar petition, or both. Such nonspecific, ambiguous statements fail to amount to affirmative evidence of futility. Further, we do not agree that this statement provides evidence that "Bernbeck’s July 2012 petition would have been as unsuccessful as his January 2012 petition.” Post at 655. Bernbeck had five months to meet the requirement for his January 2012 petition but roughly two years for his July 2012 petition. As we explained above, we also disagree with the dissent's position that a “definite time frame” of two years satisfies Lujan. Post at 653.
The precedent relied upon by the dissent is distinguishable on the bases outlined above. Besides centering on the right to vote, in many of these cases either the plaintiffs did in fact collect and submit signatures, attempted compliance with the challenged restriction would have been futile, or the claims involved burdens like those raised in Bernbeck’s First *650 Amendment claim. Contrary to the dissent’s characterization, the decision in Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), does not specify whether petitions bearing signatures were submitted by the plaintiffs to and rejected by the State. But the appellants' own brief asserted that the two relevant plaintiffs — Hall and Tyner — “collected and properly filed 25,000 nomination signatures,” and that "[a]ppellees refused to place their names on the ballot, relying on [specified] provisions of California law.” Brief of Appellants at 9, Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). The Court's determination in footnote nine that Hall and Tyner possessed standing was made in response to the State’s argument that as a general matter only electors, not aspiring candidates, have standing to challenge signature requirements. Storer, 415 U.S. at 738 n. 9, 94 S.Ct. 1274. Our decision does not contradict that determination in any way.
For these reasons, we think the dissent’s concerns, though important, are not implicated by this case as it comes before us.

. Contrary to the dissent, we believe Bern-beck’s allegation that he is a "single voter,” unsubstantiated by any record evidence, falls short of his evidentiary burden. (Incidentally, Nebraska law does permit unregistered voters to participate in elections in limited circumstances. See Neb. Rev. Stat. § 32—933(1)(a).)

. Because we are without jurisdiction to entertain this claim, we are also precluded from accepting Bernbeck’s invitation to affirm the judgment on the alternate ground of a First Amendment violation, which claim he did not cross-appeal.