*798 ARNOLD, Circuit Judge,
dissenting.
The 2014 election has come and gone, MFA’s election committee has dissolved, and the ballot measure for which MFA’s election committee was created to support has passed. MFA and the court nonetheless maintain that MFA has carried its burden to demonstrate an ongoing Article III case or controversy. Because I believe that this case is moot, that its challenges to future' disputes are unripe, and that MFA lacks standing to obtain prospective equitable relief, I respectfully dissent.
Article III requires that a plaintiffs personal interest in the litigation must continue throughout the life of the case, otherwise the case is- moot. See Nat’l Right to Life Political Action Comm. v. Connor, 323 F.3d 684, 691 (8th Cir. 2003). -The court draws on Connor to hold that MFA’s claims were not moot because they were capable of repetition yet would evade review. Claims are “capable of repetition yet evading review” only when “there is a reasonable expectation that the same complaining party will be subject to the same action again.” Id. MFA, however, provides no evidence that it will participate in a future election, much less create an election committee within 30 days of one. The very nature of the election committee in Connor, a continuing committee, suggested future participation because continuing committees do not terminate by operation of law. See Mo. Rev. Stat. § 130.011(10). Such a committee also tends to focus on issues that recur in different elections, such as the. pro-life concerns of the committee in Connor.
MFA’s election committee, however, is a campaign committee that, as the court itself recognizes, dissolved by operation of law shortly after the 2014 election. See Mo. Rev. Stat. § 130.011(8). It advocated (successfully) for the passage of a particular ballot measure and filed a termination statement. Unlike the record in Connor, the record here contains no evidence that the committee at issue will continue to operate or regenerate to participate in future elections, nor is there evidence that the ballot measure for which MFA successfully advocated will be the subject of a future election. Because MFA did not “make a reasonable showing that [it] will again be subjected to the alleged illegality,” City of Los Angeles v. Lyons, 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), its claims are not capable of repetition yet evading review. So they are moot.
I respectfully disagree with the court’s reliance on MFA’s allegation that the formation requirement will harm MFA “if and when it chooses to” participate in another election. Not only is the allegation not evidence, this “some day” intention is much too speculative to overcome mootness. See Bernbeck v. Gale, No. 15-1983, 829 F.3d 643, 648 n. 3, 2016 WL 3769481, at *3 n. 3 (8th Cir. July 14, 2016). The court’s reliance on Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974), is also misplaced. Super Tire involved a state law that made striking workers eligible for welfare programs. Even though the strike in question ended while the litigation was pending, the state law continued to affect the interests of the parties because, as the Supreme Court explained one year after deciding Super Tire, the parties were engaged in “cyclically recurring bargaining,” Weinstein v. Bradford, 423 U.S. 147, 148, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam), and the law’s favorable effect on the employees altered the parties’ bargaining positions. See Super Tire, 416 U.S. at 124, 94 S.Ct. 1694. The state law therefore had an ongoing, continuous, and certain effect. This case more closely resembles Weinstein, where the Supreme Court held that a former state prisoner’s challenge to the state’s parole procedures was moot because he had been released from prison *799 and thus no longer had a present interest in parole policies. Id. at 147-48, 96 S.Ct. 847. By providing no evidence of an intent to regenerate for future elections, MFA has not demonstrated a presently affected interest.
I suggest further that the court errs by concluding that MFA’s claims are not moot because the MEC has thus far only declined to penalize MFA. It is unclear to me how the MEC could penalize a campaign committee long after it has dissolved, and the two consent orders that the court identifies as showing an imminent threat of a penalty involve penalties levied against continuing committees, which do not dissolve by operation of law. Nothing in the record shows that MEC actually penalizes defunct campaign committees for late formation or suggests how it could even do so.
MFA’s claims are also unripe. Ripeness requires an examination of the fitness of issues for judicial determination and the hardship to the parties when the decision of a case is deferred. Parrish v. Dayton, 761 F.3d 873, 875 (8th Cir. 2014). The fitness consideration “safeguards against judicial review of hypothetical or speculative disagreements,” and the hardship consideration deals with whether delayed review would work a significant practical harm on the plaintiff. Id. This harm must be “certainly impending.” Id. at 876. Claims are not ripe when they rest on “contingent future events that may not occur as anticipated, or indeed may not occur at all.” Id. at 875-76.
MFA’s claims for prospective equitable relief depend entirely on speculation. Delayed review will not harm MFA because it has given no evidence of an intent to regenerate its election committee for future elections. In no sense is any injury “certainly impending.” Unlike 281 Care Committee v. Ameson, 638 F.3d 621, 631 (8th Cir. 2011), upon which the court relies, MFA will not suffer harm “at defined points” in the future because it has provided no evidence of an intent to act in the future. And the fact that it may have been harmed previously does not license it to seek prospective equitable relief ad infini-tum, and the court errs in apparently concluding otherwise.
In Golden v. Zwickler, the Supreme Court confronted a First Amendment challenge to a New York law barring distribution of anonymous literature in connection with an election campaign. 394 U.S. 103, 104-05, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). The plaintiff was convicted (and thus already harmed) under the law for distributing literature targeting a particular Congressman running for re-election in 1964. The First Amendment challenge, filed after the 1964 election and the reversal of the plaintiffs conviction, alleged that the same Congressman would run in 1966, that he had been a political figure for many years, and that the plaintiff intended to continue distributing such literature. After the case was filed, the Congressman accepted a position in the New York judiciary, so the Court concluded that it was unlikely that the Congressman would seek re-election, precluding a finding that there was sufficient immediacy and reality, so the Court lacked Article III jurisdiction. Because, moreover, there was no upcoming re-election campaign, “it was wholly conjectural that another occasion might arise when [plaintiff] might be prosecuted for distributing the handbills referred to in the complaint,” and his assertion that the former Congressman could run again was “hardly a substitute for evidence that this is a prospect of ’immediacy and reality.’ ” Constitutional questions, even First Amendment ones, must emanate from a specific live grievance. Id. at 109-10, 89 S.Ct. 956. The Court’s observations in Golden apply here with equal force.
*800 Relatedly, MFA did not prove an actual, imminent injury that is not conjectural or hypothetical, Mo. Roundtable for Life v. Carnahan, 676 F.3d 665, 672 (8th Cir. 2012), so it lacks standing. To have standing to raise a First Amendment challenge to a state statute, “the plaintiff needs only to establish that he would like to engage in arguably protected speech, but” the statute in question significantly discourages him from doing so. 281 Care Comm., 638 F.3d at 627. The decision to refrain from speaking in light of the relevant statute must be objectively reasonable, which requires the plaintiff to demonstrate “an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution.” Id.
The court concludes that MFA was harmed by its self-censorship. It seems to me that MFA’s self-imposed silence, if any, was not objectively reasonable. We recognized in Connor, when construing a virtually identical formation requirement, that the requirement “does not, on its face, limit issue or express advocacy.” Connor, 323 F.3d at 693. In fact, MFA’s proposed construction of the relevant statute borders on the fanciful. Life is risky, particularly political life, and President Truman’s aphorism about the heat and the kitchen surely has a special resonance in Missouri campaigns. As Mr. Justice Cardozo remarked in a different but similar context, “the timorous may stay at home.” Murphy v. Steeplechase Amusement Co., 250 N.Y. 479, 483, 166 N.E. 173, 174 (1929). And MFA’s self-imposed blackout does nothing to avoid a penalty; it could have been assessed a penalty whether it was actively speaking or keeping quiet: The challenged portion of the statute concerns only MFA’s formation, so whatever MFA did (or did not do) after it formed does not help resolve the standing inquiry.
Finally, [t]o have Article III standing to seek prospective relief, plaintiffs must show they are likely to suffer future injury that will be remedied by the relief sought.” Elizabeth M. v. Montenez, 458 F.3d 779, 784 (8th Cir. 2006). “Past exposure to illegal conduct” will not suffice absent present adverse effects. Id. Past wrongs are merely evidence showing the existence of a real and immediate threat of repeated injury. As with the chokeholds in Lyons, MFA has not shown a real and immediate threat of future harm that justifies prospective relief. “Absent a sufficient likelihood that [it] will again be wronged in a similar way, [MFA] is no more entitled to an injunction than any other citizen of [Missouri].” Lyons, 461 U.S. at 111, 103 S.Ct. 1660. If MFA wants to vindicate what happened to it in 2014, a claim for damages would be more appropriate. See id. at 105, 111, 103 S.Ct. 1660.
The court gives short shrift to MFA’s lack of plans for participating in future elections. Since MFA has not demonstrated the existence of an Article III case or controversy, I respectfully dissent from the court’s opinion and would affirm the district court’s judgment.