# United States Court of Appeals
## For the Eighth Circuit

---

No. 24-2845

---

Minnesota Deer Farmers Association; Aaron Seitz; Allen Huju; Brian Evans; Sarah Evans; Deb Houlthaus; John Holthaus; Devon Lien; Emily Lien; Gary Olson; Jim Simonson; Chase Simonson; Lisa Clark; Ray Matejcek; Michael Robokoff; Scott Fier; Steven Uchytil; Melissa Uchytil; Andrew C. Whitcomb; Scott Salonek; Jamey Blome; Renae Blome; Joseph Collins; Ken Williams; Luke Hanson; Kendra Hanson; Mark Volk; Mary Volk; Nolan Buchner; Stephanie Buchner; Paul Agre; Samantha Uchytil; Stanley Tvedt; Francella Tvedt; Jennifer Lynn Boon; Mark Henricus Boon; Trudy Graves; Steve Porter; Peggy Porter; Nolan Porter; Dennis Udovich

*Plaintiffs - Appellants*

v.

Sarah Strommen, in her official capacity as Commissioner of the Minnesota Department of Natural Resources, or her successor; Erica Sawatzke, in her official capacity as Board President of Minnesota Board of Animal Health, or her successor; Peggy Anne Hawkins, in her official capacity as Board Vice President of Minnesota Board of Animal Health, or her successor; Jessica Koppien-Fox, in her official capacity as Member of Minnesota Board of Animal Health, or her successor; Alex Stade, in his official capacity as Member of Minnesota Board of Animal Health, or his successor; Steve Neil, in his official capacity as Member of Minnesota Board of Animal Health, or his successor; Brandon Schafer, in his official capacity as Member of Minnesota Board of Animal Health, or his successor

*Defendants - Appellees*

---

Appeal from United States District Court
for the District of Minnesota

---

Submitted: May 15, 2025
Filed: July 28, 2025

_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.

_____

BENTON, Circuit Judge.

The Minnesota Legislature imposed heightened restrictions on white-tailed deer farming by amending Minnesota Statute, section 35.155, subdivision 10(c), subdivision 4, among others. The Minnesota Deer Farmers Association, individual registered deer farmers, and individuals desiring registrations—collectively, the Deer Farmers—claim that the amendments violate their substantive due process, equal protection, and procedural due process rights. The district court[1] dismissed their complaint. The Deer Farmers appeal. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

**I.**

Minnesota heavily regulates deer farming. *See, e.g.,* **Minn. Stat. §§ 35.155**. In 2023, the Minnesota Legislature amended its statutes about farmed Cervidae.[2] *See id.* The amended subdivision 10(c) prohibits new registrations for white-tailed deer herds, and limits registrations to only one transfer and to only immediate family members.[3] **Minn. Stat. § 35.155, subd. 10(c)**. By the amendments to subdivision

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

[2]"'Cervidae' means animals that are members of the family Cervidae and includes, but is not limited to, white-tailed deer, mule deer, red deer, elk, moose, caribou, reindeer, and muntjac." **Minn. Stat. § 35.153, subd. 2**.

[3]"The board must not allow new registrations under this section for possessing white-tailed deer. This paragraph does not prohibit a person holding a valid

4, fencing must prevent "physical contact between farmed Cervidae and free-roaming Cervidae."[4] **Minn. Stat. § 35.155, subd. 4.**

Plaintiffs-appellants are the Minnesota Deer Farmers Association and its members, who fall into four categories:

- registered white-tailed deer farmers *with* an immediate family member to whom they could sell or transfer their registration if interested;[5]
- registered white-tailed deer farmers *without* an immediate family member to whom they could sell or transfer their registration;[6]

registration under this subdivision from selling or transferring the person's registration to an immediate family member. A valid registration may be sold or transferred only once under this paragraph." **Minn. Stat. § 35.155, subd. 10(c)**.

[4]"The Board of Animal Health or commissioner of natural resources may determine whether the construction and maintenance of fencing is adequate to prevent physical contact or escape under this subdivision and may compel corrective action when fencing is determined to be inadequate." **Minn. Stat. § 35.155, subd. 4**.

[5]Aaron Seitz, Brian and Sarah Evans, Devon and Emily Lien, Jim Simonson, Chase Simonson, Lisa Clark, Michael Robokoff, Scott Fier, Steven and Melissa Uchytil, Andrew C. Whitcomb, Scott Salonek, Jamey and Renae Blome, Ken Williams, Luke and Kendra Hanson, Mark and Mary Volk, Stanley and Francella Tvedt, Jennifer Lynn and Mark Henricus Boon, Trudy Graves, and Steve and Peggy Porter.

[6]Allen Huju, Deb and John Holthaus, Gary Olson, Chase Simonson, Ray Matejcek, Joseph Collins, Nolan and Stephanie Buchner, and Paul Agre. Chase Simonson may fall into two categories. According to the Amended Complaint: "By Chase Simonson's own definition of 'immediate family,' he could sell or transfer his white-tailed registration to his dad, Jim Simonson, or possibly to his sister (if she were interested) as immediate family members, albeit only once. However, at the present time, Chase has no family of his own, thus, he does not have an immediate family member of his own to sell or transfer his present registration." Additionally,

- unregistered children of registered deer farmers expecting to receive a registration from their parents;[7]
- and an unregistered former white-tailed deer farmer desiring a registration—Dennis Udovich.

The Deer Farmers recognize: "The government's stated purpose for the state law's restriction on alienation of white-tailed deer livestock is to contain Chronic Wasting Disease (CWD)." According to the Amended Complaint:

> CWD is an infectious, degenerative disease of animals that causes brain cells to die, ultimately leading to the death of the affected animal. . . . CWD affects mule deer, white-tailed deer, red deer, sika deer, elk, caribou, and moose. . . . CWD has been found in free-ranging and captive deer populations in 30 U.S. states and four Canadian provinces. . . . There is no known "cure" for CWD.

A Minnesota Department of Natural Resources (DNR) report to the Minnesota Legislature identified deer farming as one of the "primary risk factors facilitating the introduction of CWD into Minnesota—or its spread within the state"; noted "inconsistent" compliance with regulations; and recommended increased oversight of deer farms, including addressing "[f]ence deficiencies."[8]

The DNR administers and enforces Minnesota's white-tailed deer statutes, assuming these responsibilities from the Board of Animal Health. The DNR's website says: "Effective Sept. 1, 2024, state law will require that farmed cervidae

---

Chase's father, Jim Simonson, could transfer his registration to his son. Because it does not impact the analysis, this court treats Chase as a registered white-tailed deer farmer without an immediate family member to whom he could sell or transfer the registration.

[7]Nolan Porter and Samantha Uchytil.

[8]https://files.dnr.state.mn.us/aboutdnr/reports/legislative/2022/concurrent-authority-legislative-report-farmed-deer.pdf (last visited July 10, 2025).

be confined in a manner that prevents 'physical contact' between farmed and wild cervidae."[9]  The website provides a "list of examples" that "satisfy new requirements," which "are not an exhaustive list for satisfying the statute and are being offered for illustrative purposes only."  It caveats:

> The statements in this document do not have the force and effect of law. This document is informational only and should not be interpreted as creating new criteria or requirements beyond what is already established in the relevant statutes and rules.  Whether an individual facility complies with the relevant statutes and rules will be determined on a case-by-case basis.  Nothing in this document should be considered legal advice.

The Deer Farmers sued the Board and the Commissioner of the DNR  in their official capacity, seeking a declaration that the amendments are unconstitutional and an injunction of their enforcement.  The Deer Farmers appeal the District Court's dismissal of their substantive due process, equal protection, and procedural due process claims.  This court reviews de novo the grant of a motion to dismiss for failure to state a claim.  *Chase v. First Fed. Bank of Kansas City*, 932 F.3d 1158, 1160 (8th Cir. 2019).

## II.

The Deer Farmers argue that subdivision 10(c) deprives their fundamental right to pursue their chosen profession of white-tailed deer farming in violation of their substantive due process rights under the Fourteenth Amendment.

This Court first considers the Deer Farmers' standing.  *Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007) ("Courts are 'obliged to examine standing *sua sponte* . . . .'"), *quoting Adarand Consts., Inc. v. Mineta*, 534 U.S. 103, 109 (2001).  "A plaintiff must demonstrate standing for each claim he seeks to press

---

[9]https://www.dnr.state.mn.us/mammals/deer/management/deer-farms.html (last visited July 10, 2025).

and for each form of relief that is sought." ***Davis v. FEC***, 554 U.S. 724, 734 (2008) (cleaned up). To have standing, a plaintiff must suffer a concrete harm, not a hypothetical one. *See* ***TransUnion LLC v. Ramirez***, 594 U.S. 413, 423 (2021). "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." ***Id.*** at 435 (citations omitted).

The Deer Farmers seem to assert the substantive due process claim only as applied to Udovich. As an unregistered former white-tailed deer farmer desiring a registration, Udovich has standing because his desire to pursue deer farming is "real and immediate." ***McNaught v. Nolen***, 76 F.4th 764, 770–71 (8th Cir. 2023) (rejecting standing for a plaintiff who claimed future harm to her employment prospects with "little more than an amorphous level of intention to apply for some vaguely defined positions at some indeterminate point in the future." (cleaned up)). Having reached out to the Board about a new registration and learned that they were prohibited, Udovich took "the acts necessary to make [his] injury happen." ***Id.*** at 771, *citing* ***Bernbeck v. Gale***, 829 F.3d 643, 648 (8th Cir. 2016), *quoting* ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 564 n.2 (1992). The Association thus also has standing because one of its members—Udovich—has standing. *See* ***Iowa League of Cities v. EPA***, 711 F.3d 844, 869 (8th Cir. 2013) ("The [association] need not establish that all of its members would have standing to sue individually so long as it can show that 'any one of them' would have standing."), *quoting* ***Warth v. Seldin***, 422 U.S. 490, 511 (1975).

Recognizing the state's ability to regulate their industry, see *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 488 (1955), the Deer Farmers take issue with the regulation's "complete prohibition" on white-tailed deer farming, as applied to Udovich. Trying to elicit strict scrutiny review, the Deer Farmers argue this "complete prohibition" infringes a fundamental right. But they conflate a generalized due process right with a fundamental right. "[T]he liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment." ***Conn v. Gabbert***, 526

U.S. 286, 291–92 (1999). But that right "is nevertheless subject to *reasonable* government regulation." *Id.* (emphasis added). "The fact that a right is acknowledged to be a liberty covered by the Due Process Clause does not automatically render that right 'fundamental' such that any statutory regulation of that right must be subjected to the highest constitutional scrutiny." *Doe v. Rogers*, 139 F. Supp. 3d 120, 157 (D.D.C. 2015), *discussing Dent v. West Virginia*, 129 U.S. 114, 121–22 (1889) (acknowledging "the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose" without addressing whether that right is fundamental), *Schware v. Board of Bar Exam'rs*, 353 U.S. 232, 239 (1957) (permitting a state to "require high standards of qualification" if the standards have "a rational connection with the applicant's fitness or capacity to practice" the profession), *and Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (listing the few rights the Court has construed as fundamental and excluding the right to pursue one's chosen profession). The Due Process Clause only "specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Glucksberg*, 521 U.S. at 720–21 (internal citations omitted).

The Deer Farmers present no evidence or precedent establishing, or even indicating, that white-tailed deer farming is deeply rooted in the nation's history and traditions or that the asserted right is implicit in the concept of ordered liberty. As in *White Plume*, where this court applied *Glucksberg* and declined to "declare 'hemp farming' a fundamental right," this court also declines to declare white-tailed deer farming a fundamental right. *United States v. White Plume*, 447 F.3d 1067, 1075 (8th Cir. 2006). The Deer Farmers' reframing of the right as the *pursuit* of the occupation of white-tailed deer farming does not change that conclusion. *See Rogers*, 139 F. Supp. 3d at 156 ("numerous federal circuit courts have concluded that the right to engage in a chosen profession is not a fundamental right"). This court rejects the Deer Farmers' effort to expand the scope of fundamental rights. *See Glucksberg*, 521 U.S. at 720 ("We have always been reluctant to expand the concept of substantive due process . . . ." (cleaned up)).

Nor does Minnesota's statutory recognition of Cervidae farming as an occupation render it a fundamental right. *See* **Minn. Stat. § 17.452, subd. 5** ("Raising farmed Cervidae is agricultural production and an agricultural pursuit."). A state statute cannot create a fundamental Constitutional right. *See **Regents of Univ. of Mich. v. Ewing***, 474 U.S. 214, 229 (1985) (Powell, J., concurring) ("substantive due process rights are created only by the Constitution"). And a state legislature can rescind or limit a right of its own creation, so long as the elements of procedural—not substantive—due process are observed. *See **Van Orden v. Stringer***, 937 F.3d 1162, 1168–69 (8th Cir. 2019). *See also **Gattis v. Gravett***, 806 F.2d 778, 781 (8th Cir. 1986) ("the legislative process itself provides citizens with all of the 'process' they are 'due'").

## III.

The Deer Farmers argue that subdivision 10(c) also advantages those with immediate family members in violation of their equal protection rights under the Fourteenth Amendment.

This court reads the Deer Farmers' brief as asserting a claim only for registered deer farmers without immediate family members. *See **Davis***, 554 U.S. at 734 ("A plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." (cleaned up)). They have standing because their inability to transfer their registration at the current moment is a concrete harm, not a hypothetical one. *See **TransUnion LLC***, 594 U.S. at 423. The Association thus also has standing because some of its members have standing. *See **Iowa League of Cities***, 711 F.3d at 869.

The Court "has long held that 'a classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" ***Armour v. City of Indianapolis***, 566 U.S. 673, 680 (2012), *quoting **Heller v. Doe***, 509 U.S. 312, 319–20 (1993) (alteration in

original).  As discussed, there is no fundamental right to pursue the occupation of white-tailed deer farming.  And having immediate family members is a non-suspect class.  *See Heller*, 509 U.S. at 328–29 (applying rational basis review to a statute allowing close relatives to participate as parties in guardianship proceedings).  Thus, this court will not apply strict scrutiny.

## IV.

The Deer Farmers maintain that subsection 10(c) lacks even a rational basis.  "Where a law neither implicates a fundamental right nor involves a suspect or quasi-suspect classification, the law must only be rationally related to a legitimate government interest."  *See Gallagher v. City of Clayton*, 699 F.3d 1013, 1019 (8th Cir. 2012).  "Such a law is 'accorded a strong presumption of validity' and is upheld 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  *Id.*, *quoting Heller*, 509 U.S. at 319, *and then FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (internal citations omitted).  "The judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines."  *White Plume*, 447 F.3d at 1075 (cleaned up).

Minnesota restricted white-tailed deer farming for a legitimate government interest:  "to contain Chronic Wasting Disease."  *See Gallagher*, 699 F.3d at 1019–20 (upholding under rational basis review an ordinance with a "health-based justification").  Subsection 10(c) is rational despite including only white-tailed deer farmers, not all Cervidae farmers.  *See Vance v. Bradley*, 440 U.S. 93, 108 (1979) ("Even if the classification involved here is to some extent both underinclusive and overinclusive, and hence the line drawn . . . imperfect, it is nevertheless the rule that in a case like this perfection is by no means required." (cleaned up)).  Likewise, the one-time transfer provision is rational despite not immediately ending all white-tailed deer farming.  *See Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 443 (8th Cir. 2007) (permitting legislation banning one type of gambling, but not all types of gambling, as an "incremental reform").  The Minnesota

Legislature made a policy decision to allow family deer farms to continue for another generation, which protects familial, occupational, investment, and reliance interests, particularly considering the culture of "carrying on of the family farm." Subdivision 10(c)'s prohibition on new registrations and provision for one-time transfers are rationally related to Minnesota's legitimate interests.

## V.

The Deer Farmers argue that the DNR implemented subdivision 4's additional fencing requirements without any rule-making process, violating procedural due process protections. The complaint does not adequately allege that a particular plaintiff-appellant has standing to bring this claim. The Deer Farmers vaguely assert that "white-tailed deer farmers *are* being cited for not having the secondary fence." (emphasis in original). But their complaint never mentions citations, nor identifies any individual farmers as having received one. The complaint does not allege that any individual farmer has an intention to engage in conduct noncompliant with subdivision 4's requirements. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) ("[A] plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." (cleaned up)). The absence of standing prevents this court from reaching the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998).

\* \* \* \* \* \* \*

The judgment is affirmed as modified.

_____

-10-