# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3012

_____

| | | |
|---|---|---|
| United Hospital, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Tommy G. Thompson, in his official | * | |
| capacity as Secretary of the Department | * | |
| of Health and Human Services, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: May 12, 2004
Filed: September 7, 2004

_____

Before LOKEN, Chief Judge, BRIGHT, Circuit Judge, and DORR,[*] District Judge.

_____

BRIGHT, Circuit Judge.

United Hospital ("United"), a private healthcare provider in St. Paul, Minnesota, appeals from the district court's[1] summary judgment in favor of the Secretary of Health & Human Services ("the Secretary"). United seeks certain

_____

[*]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri, sitting by designation.

[1]Hon. Donovan W. Frank, United States District Judge for the District of Minnesota.

payments under the Secretary's Medicare reimbursement program for hospital expenses related to the treatment of poor and disabled patients. The district court approved the Secretary's decision not to reimburse United for the claimed expenses as not arbitrary, capricious, or contrary to law. We agree with the district court's decision against United and affirm.

## I.     Background

Pursuant to the Medicare (for the elderly) and Medicaid (for the poor and disabled) programs established by Congress, the Secretary reimburses hospitals for costs incurred in treating patients who qualify for insurance under these programs. Hospitals receive reimbursement for some costs on the basis of the treatment provided; for example, the hospital would receive a predetermined amount of money for every treatment it provides for a covered patient's broken arm. Hospitals also receive payment based on characteristics of the hospital, rather than the particular treatment provided. For example, since 1986, those hospitals which serve an unusually high number of Medicaid patients are entitled to a "disproportionate share hospital" ("DSH") adjustment. See 42 U.S.C. § 1395ww(d)(5)(F)(i)(I) (authorizing supplemental payments to a hospital that "serves a significantly disproportionate number of low-income patients"). The Secretary applies a statutory formula to determine how much the DSH adjustment for a particular hospital should be, based on the number of days that Medicaid patients spent in the hospital (known as "Medicaid days").

Some states, including Minnesota, provide health insurance to indigent residents who are not eligible for federally-funded Medicaid. Patients' time spent in hospitals under this type of program is known as "state-only" days, indicating that the state foots the bill by itself, apart from Medicaid. Even when a patient does receive benefits under Medicaid, the reimbursement comes to the hospital via the states, which administer the Medicaid program on behalf of the Secretary. Poor patients

may have their treatment costs covered either by the state's own independent program or under Medicaid, but in either case the hospital receives payment from the state. However, only Medicaid days count toward establishing a particular hospital's DSH rate. The state's provision of benefits under its own program does not work to increase the federal government's reimbursement rate under Medicaid.

This accounting issue caused confusion for some hospitals, which were submitting all low-income-patient days for the Secretary's calculation of DSH rates, regardless of whether the reimbursement came under the state's own program or under the federally funded Medicaid program. To make clear that only Medicaid days could be counted toward the DSH rate, the Secretary, acting through the agency now known as the Centers for Medicare and Medicaid Services ("the Centers"), issued a letter to Congressional oversight officials on October 15, 1999. The letter explained that the Centers would not seek to recoup payments to hospitals already made (erroneously) for state-only days, but that in the future hospitals would have to abide by the statutory requirement that only Medicaid days count toward DSH payments.[2] Later, the Centers formalized this position in Program Memorandum A-99-62 ("Program Memo"), issued December 1, 1999. The Program Memo established that hospitals that had been reimbursed for state-only days prior to October 15, 1999, or that had appealed a denial of reimbursement for state-only days as of October 15, 1999, would not face recoupment action from the Secretary and further would have any money already recouped returned to the hospitals. Furthermore, the Program Memo provided that the Secretary would pay out to hospitals "that did not receive payments reflecting the erroneous inclusion of otherwise ineligible days[, if those hospitals] filed a jurisdictionally proper appeal to the [administrative appeal board]

---

[2]See 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (defining the Medicaid component of the DSH payment as "the fraction . . . the numerator of which is the number of the hospital's patient days . . . which consist of patients who . . . were eligible for medical assistance under a State plan approved under [the Medicaid program] . . . .").

on the issue of the exclusion of these types of days from the Medicare DSH formula before October 15, 1999."

On the other hand, from January 1, 2000 forward, no state-only days accrued would count toward DSH reimbursement and hospitals raising the reimbursement issue for state-only days for the first time after the October 15 cut-off date would not prevail on that issue on appeal. In effect, the Program Memo exempts certain hospitals that misconstrued the DSH statutes and rules from the otherwise-harsh costs of their errors.

The basic structure of the Program Memo distinguished between hospitals that wrongly believed themselves eligible for reimbursement for state-only days, and hospitals that correctly realized they were not eligible but then pursued benefits once it became clear that the mistaken hospitals would not have to pay for their error. The primary issues on appeal in this case, then, are whether United falls into the latter category or not, and if it does, whether the Secretary's refusal to pay that category on the same basis as the first category is arbitrary and capricious.

## II.    Procedural Posture

United brought appeals to the appropriate administrative body, the Provider Reimbursement Review Board ("the Board"), in 1996 and 1997, raising issues related to its cost reports for 1992 and 1993, but not seeking the addition of state-only days to its DSH calculation. United had not sought the inclusion of state-only days since the start of the DSH concept in the mid-1980s. After the Centers issued the Program Memo, United argued for the first time, in March 2000, that it deserved to have the state-only days retroactively incorporated into its DSH reimbursements.[3] The Board

_____

[3]Apparently, United's appeals filed in both 1996 and 1997 were still pending before the Board, four years later. Perhaps a speedier resolution of the original

provided a hearing and considered United's position, but concluded that the statutory restrictions on reimbursement precluded relief for United, and that United did not fall in any of the exceptions to the statutory restrictions outlined in the Program Memo.

In August 2002, United then appealed the Board's decision to the district court, pursuant to 42 U.S.C. § 1395oo(f)(1) (granting jurisdiction to the district court over this type of appeal). The district court considered four issues raised by United: first, whether United fell under the protections of the Program Memo; second, if not, whether the Program Memo denied United its procedural rights; third, whether the Program Memo's authorization of reimbursement for some hospitals but not others was arbitrary; and fourth, whether the reimbursement for some hospitals but not others denied United equal protection of the laws as construed under the Fifth Amendment of the federal Constitution.

The district court concluded that because United's appeals before the Board did not raise the specific issue of DSH rates until March 2000, United could not claim protection under the Program Memo, which the district court held to limit relief by its plain terms to hospitals raising the DSH issue prior to October 15, 1999. The district court rejected United's second procedural argument by observing that the Board gave a hearing and full consideration to United's claims on the DSH issue. A right to have claims heard before the Board does not equate to a right to the substantive relief claimed. Finally, the district court rejected United's arguments under the "arbitrary and capricious" standard and the Fifth Amendment standard that the Program Memo's terms irrationally discriminate against hospitals like United. The district court noted that the Program Memo rationally advanced the Secretary's goal of solving the DSH confusion by "separat[ing] those hospitals who were legitimately confused from those hospitals who sought to benefit from the confusion of others."

---

appeals might have avoided the present controversy.

United now timely appeals from the district court's grant of summary judgment to the Secretary. On appeal, United strongly asserts the same four arguments raised before the trial court concerning the applicability and validity of the Program Memo.

## III. Discussion

We review the district court's grant of summary judgment de novo. See Henry v. United States Dep't of the Navy, 77 F.3d 271, 272 (8th Cir. 1996). We examine agency action with great deference, setting aside the Secretary's action only if it is "arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with the law." Creighton Omaha Regional Health Care Corp. v. Bowen, 822 F.2d 785, 789 (8th Cir. 1987).

First, we consider whether the Secretary's interpretation of the Program Memo to exclude United constituted arbitrary and capricious agency action. United adopts a three-step argument to advance its point. First, United states the undisputed fact that its jurisdictionally proper cost appeals on unrelated issues were pending before the Board prior to October 15, 1999. Second, United states the undisputed legal conclusion that the agency review process allows new issues to be raised before the Board at any time, even after the appeals were first filed. Finally, United argues that therefore, its March 2000 introduction of the DSH issues to its pending appeals should be treated under the Program Memo as if the DSH issues had been raised when the appeals were first filed (i.e., prior to the October 15 cut-off).

We observe that United did raise the DSH issue before the Board and obtain a decision on that issue, albeit an adverse decision. However, logic clearly does not support the leap United asks this court to make: that any issue raised and resolved by the Board at any time must be treated as constructively raised at the start of the administrative appeal. Neither does any statutory or regulatory provision support this backdating. To the contrary, the plain language of the Program Memo expressly

-6-

excludes hospitals in United's position from gaining its protections, declaring a hospital's eligibility for reimbursement only if the hospital filed "a jurisdictionally proper appeal to the [Board] on the issue of the exclusion of these types of days from the Medicare DSH formula before October 15, 1999."[4] United's position would have us read the crucial phrase "on the issue of the exclusion of these types of days" out of the Program Memo, allowing DSH reimbursement if the hospital's appeals were filed before the cut-off date on <u>any</u> issue. We decline to alter the plain text of the Program Memo. United falls outside the protections established by the Secretary.

United further asserts that if it is not entitled to the challenged DSH payments under the Program Memo, then the Program Memo itself must be illegal. First, United argues that the Program Memo improperly restricted United's procedural rights to raise issues before the Board. As we have discussed above, however, the Board did have a full hearing and gave careful consideration to United's claims. Obviously, United then took full advantage of its statutory right to appeal the Board's decision to the district court and to this court. That each of the relevant adjudicators decided against United does not establish any lack of statutory due process.

United finally argues that its exclusion from the safe havens of the Program Memo is irrational, thereby failing the arbitrary and capricious test under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (requiring reviewing courts to invalidate agency action that is "arbitrary, capricious, an abuse of discretion, or

---

[4]The Program Memo goes on to instruct:

Do not reopen a cost report and revise the Medicare DSH payment to reflect the inclusion of these types of days as Medicaid days if, on or after October 15, 1999, a hospital added the issue of the exclusion of these types of days to a jurisdictionally proper appeal already pending before [the Board].

App. at E4.

otherwise not in accordance with law") and the rational purpose test of our equal protection jurisprudence under the Fifth Amendment to the United States Constitution, see, e.g., Arkansas Pharmacists Ass'n v. Harris, 627 F.2d 867, 871 (8th Cir. 1980) ("[A] court must uphold [economic] regulations if they bear a rational relation to a legitimate congressional purpose").

United fails on both arguments, because the Secretary had an amply rational basis for distinguishing between hospitals that correctly understood that only Medicaid days could count toward DSH reimbursement, and other hospitals that believed state-only days could also count. United asserts that "[t]he high costs associated with treating a disproportionate share of low income patients are felt no less acutely by Minnesota urban hospitals than New York and Pennsylvania urban hospitals." We have no reason to doubt that assertion. However, the basis for the Secretary's distinction between the Minnesota hospitals and the New York and Pennsylvania hospitals lies not in geography, but in chronology. The New York and Pennsylvania hospitals argued, before the Secretary's decision to allow overpayments to go unrecovered had been announced, that they deserved to have their state-only days included in the DSH calculations. United did not make that argument until it already knew the other hospitals would get to keep money received on that basis. Because the statute makes clear that only Medicaid days can be included in the DSH calculations, the Secretary had to set a date beyond which the erroneous overpayments would cease. The date of October 15, 1999 satisfies common sense (and the rational basis test) because any claims raised for the first time after that date would come from hospitals that knew full well that the Secretary's previous payments were undeserved. Once some hospitals misconstrued their eligibility for DSH reimbursement, the Secretary had no choice but to seek a solution. The solution provided, while incomplete, more than satisfies the rational basis test. The perfect must not become the enemy of the good. See Alcala v. Burns, 545 F.2d 1101, 1105 (8th Cir. 1976) ("[The] Equal Protection Clause does not require that [an agency]

must choose between attacking every aspect of a problem or not attacking the problem at all." (quoting <u>Dandridge v. Williams</u>, 397 U.S. 471, 487 (1970)).

## IV.    Conclusion

The Secretary erroneously overpaid certain hospitals who believed themselves eligible for extra reimbursement. Now United, which never operated under the misapprehension suffered by the other hospitals, seeks the same unearned payments. The Secretary's refusal to compound the error was not irrational or discriminatory. Accordingly, we affirm the judgment of the district court.

_____