# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3968

_____

Ndioba Niang; Tameka Stigers

*Plaintiffs - Appellants*

v.

Emily Carroll, in her official capacity as Executive Director of the Missouri Board of Cosmetology and Barber Examiners; Wayne Kindle, In his official capacity as a member of the Missouri Board of Cosmetology and Barber Examiners

*Defendants - Appellees*

Betty Leake

*Defendant*

Jackie Crow, In her official capacity as a member of the Missouri Board of Cosmetology and Barber Examiners; Joseph Nicholson, In his official capacity as a member of the Missouri Board of Cosmetology and Barber Examiners; Leata Price-Land, In her official capacity as a member of the Missouri Board of Cosmetology and Barber Examiners; Lori Bossert, In her official capacity as a member of the Missouri Board of Cosmetology and Barber Examiners; Linda M. Bramblett, In her official capacity as a member of the Missouri Board of Cosmetology and Barber Examiners; Leo D. Price, Sr., In his official capacity as a member of the Missouri Board of Cosmetology and Barber Examiners; Christie L. Rodriguez, In her official capacity as a member of the Missouri Board of Cosmetology and Barber Examiners

*Defendants - Appellees*

------------------------------

Missouri African Hairbraiders and Their Customers; Pacific Legal Foundation; Public Choice Scholars; Cato Institute; Reason Foundation; Individual Rights Foundation; Senator Rand Paul; Goldwater Institute; Beacon Center of Tennessee; The Show-Me Institute

*Amici on Behalf of Appellant(s)*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 20, 2017
Filed: January 11, 2018
_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.
_____

BENTON, Circuit Judge.

Missouri statutes require African-style hair braiders to be licensed as barbers or cosmetologists. Ndioba "Joba" Niang and Tameka Stigers challenge this requirement under the Fourteenth Amendment. The district court[1] granted summary judgment for the State. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

African-style hair braiders are required to have a license to work for pay in Missouri. **§§ 328.020, 329.030 RSMo 2016**. License candidates must (1) complete

_____

[1]The Honorable John M. Bodenhausen, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

a costly and time-intensive training course—1,000-hours for barbering and 1,500-hours for hairdressing, (2) disclose criminal, citizenship, and limited character background, and (3) pass a licensing exam. These requirements apply to those who "cut and dress the hair for the general public" or perform "arranging, dressing, curling, singeing, waving, permanent waving, cleansing, cutting, bleaching, tinting, coloring or similar work upon the hair of any person by any means." **§§ 328.010(1)** (barbers), **329.010(5)(a)** (cosmetologists) **RSMo 2016**. Niang and Stigers—two unlicensed, compensated, African-style braiders—believe African-style braiding is different from barbering and cosmetology with distinctive techniques not covered in either training course or the exam.

This court reviews de novo a grant of summary judgment. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "Where a law neither implicates a fundamental right nor involves a suspect or quasi-suspect classification, the law must only be rationally related to a legitimate government interest." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1019 (8th Cir. 2012). This review is "a paradigm of judicial restraint" where "a statutory classification . . . must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313-14 (1993) (citations omitted). Courts must give "a strong presumption of validity" to state laws. *Heller v. Doe*, 509 U.S. 312, 319 (1993) (citations omitted). Courts must be "very reluctant" to "closely scrutinize legislative choices as to whether, how, and to what extent those interests should be pursued." *United States v. Windsor*, 133 S. Ct. 2675, 2717 (2013), *quoting City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 441-42 (1985). When a "rational basis" passes equal protection review, it "also satisfies substantive due process analysis." *Executive Air Taxi Corp. v. City of Bismarck*, 518 F.3d 562, 569 (8th Cir. 2008).

The braiders argue that the license requirement is not rationally related to any legitimate government interest. According to the State, its interests are protecting

-3-

consumers and ensuring public health and safety. The State offered evidence of health risks associated with braiding such as "hair loss, inflammation, and scalp infection." The State also presented evidence of scalp conditions that braiders must recognize as unsuitable for braiding.

The district court added two purposes: stimulating more education on African-style braiding and incentivizing braiders to offer more comprehensive hair care. The braiders object that the district court cannot offer justifications. To the contrary, courts are "not bound to consider only the stated purpose of a legislature." *Kansas City Taxi Cab Drivers Ass'n, LLC v. City of Kansas City*, 742 F.3d 807, 809 (8th Cir. 2013). The braiders have the burden to negate not only the State's justification, but also "every conceivable basis which might support it." *FCC*, 508 U.S. at 315 (internal quotations and citations omitted).

As the braiders acknowledge, the license requirement furthers legitimate government interests in health and safety. *See Barsky v. Bd. of Regents of U.*, 347 U.S. 442, 449 (1954) (as "a vital part of a state's police power," it may "establish and enforce standards of conduct within its borders relative to the health of everyone there," including "the regulation of all professions concerned with health."). In the cases the braiders cite, the government did not have a legitimate interest. *See Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002) (restricting casket sales to funeral directors—"protecting a discrete interest group from economic competition"—"is not a legitimate governmental purpose"); *St. Joseph Abbey v. Castille*, 712 F.3d 215, 222 (5th Cir. 2013) (same); *Ranschburg v. Toan*, 709 F.2d 1207, 1211 (8th Cir. 1983) (finding "intent to discriminate is not a legitimate state interest"); *Fowler v. United States*, 633 F.2d 1258, 1263 (8th Cir. 1980) ("no rational interest" "to summarily discharge without cause a mentally retarded worker, but not a non-retarded worker who performs the same job").

The braiders argue that the State's means do not fit its purposes. They emphasize an exception allowing unlicensed braiding "without the use of potentially harmful chemicals . . . while working in conjunction with any licensee for any public amusement or entertainment venue." *See* **§ 316.265 RSMo 2016**. The braiders also cite a legislative proposal by the licensing Board for a special barber/cosmetology license for braiders.

The licensing requirement is rationally related to the State's interest in public health and safety notwithstanding the licensing exception and the legislative proposal. The State is not required to "choose between attacking every aspect of a problem or not attacking the problem at all." **United Hosp. v. Thompson**, 383 F.3d 728, 733 (8th Cir. 2004), *quoting* **Dandridge v. Williams**, 397 U.S. 471, 487 (1970). "[E]ven when there is an imperfect fit between means and ends" courts are still compelled under rational basis review "to accept a legislature's generalizations." **Heller**, 509 U.S. at 321. The fit need only be arguable and rational, with "some footing in the realities of the subject addressed by the legislation." **Id.** "The assumptions underlying these rationales may be erroneous, but the very fact that they are arguable is sufficient." **FCC**, 508 U.S. at 320 (internal quotations and citation omitted). "It is enough that the State's action be rationally based and free from invidious discrimination." **Dandridge**, 397 U.S. at 487. *See also* **Schware v. Bd. of Bar Exam. of N.M.**, 353 U.S. 232, 239 (1957) (a state violates the Fourteenth Amendment when its "action is invidiously discriminatory"). Here, the fit between the licensing requirement and the State's interest is imperfect, but not unconstitutionally so.

The braiders assert that the Missouri licensing regime is too overbroad and under-inclusive to be rationally related to the State's interest. They cite the State's concession that only about 10 percent of the required training courses is relevant to African-style braiders, and that almost all the exams do not test on braiding. To the contrary, the State "may exact a needless, wasteful requirement in many cases," which may "not be in every respect logically consistent with its aims" but still be

-5-

"constitutional." ***Williamson v. Lee Optical of Okla., Inc.***, 348 U.S. 483, 487-88 (1955). "It is enough" that the State identify "an evil at hand for correction" and believe regulation "was a rational way to correct it." ***Id.*** at 488. "A State can require high standards of qualification" if it has "a rational connection with the applicant's fitness or capacity to practice." ***Schware***, 353 U.S. at 239. There may be advantages and disadvantages to a license requirement, "[b]ut it is for the legislature, not the courts, to balance" them. ***Williamson***, 348 U.S. at 487.[2]

Finally, the braiders argue that the statutes violate equal protection by treating different professionals—braiders and barbers/cosmetologists—similarly. The premise of this argument is wrong. The braiders define their profession as "braiding, locking, twisting, weaving, cornrowing, or otherwise physically manipulating hair without the use of chemicals that alter the hair's physical characteristics." The braiders' definition is rational, but it is not the only rational way to define professions that involve hair dressing and other similar services. And their definition falls squarely within the scope of the definitions of barbering and cosmetology that the Missouri legislature has chosen. Barbering is to "dress the hair for the general public." **§ 328.010(1) RSMo 2016**. Cosmetology is "arranging, dressing . . . or similar work upon the hair of any person." **§ 329.010(5)(a) RSMo 2016**. A legislature rationally could conclude that African-style braiding is not a different profession than barbering or cosmetology. "We see no constitutional reason why a

---

[2]The braiders' citations to *Peeper v. Callaway Cty. Ambulance Dist.*, 122 F.3d 619 (8th Cir. 1997) are not persuasive because it is a non-economic case about restraints on First Amendment rights. *See **Kansas City Taxi***, 742 F.3d at 810 (acknowledging non-economic cases are not persuasive in the local economic sphere); ***Lee v. Driscoll***, 871 F.3d 581, 585 (8th Cir. 2017) (interpreting *Peeper* as addressing restrictions on the First Amendment right to associate).

State may not treat all who deal with [dressing hair] as members of a profession." *See Williamson*, 348 U.S. at 490.[3]

The Missouri statutes do not violate the Fourteenth Amendment rights of the African-style hair braiders.

* * * * * * *

The judgment is affirmed.

_____

---

[3]The braiders rely on rulings by three district courts. Because these decisions do not appropriately defer to legislative choices, they are not persuasive. *See Brantley v. Kuntz*, 98 F. Supp. 3d 884, 893 (W.D. Tex. 2015) (To "shoehorn two unlike professions 'into a single, identical mold'" violates substantive due process); *Clayton v. Steinagel*, 885 F. Supp. 2d 1212, 1215 (D. Utah 2012) (finding a violation of equal protection where State "irrationally squeezed 'two professions into a single, identical mold'"); *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101, 1103 (S.D. Cal. 1999) (same), *questioned in part by Merrifield v. Lockyer*, 547 F.3d 978, 985 (9th Cir. 2008) (district court's reasoning in *Cornwell* "cannot survive equal protection analysis").