# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3403

_____

Lee Birchansky, M.D.; Fox Eye Surgery, LLC; Korver Ear Nose and Throat, LLC;
Michael Jensen; Michael Driesen

*Plaintiffs - Appellants*

v.

Gerd W. Clabaugh, in his official capacity as Director of Iowa Department of
Public Health and Administrator; Rebecca Swift, in her official capacity as
Administrator of the Health Facilities Council; Roberta Chambers, in their official
capacities as Members of the Health Facilities Council; Connie Schmett, in their
official capacities as Members of the Health Facilities Council; Roger Thomas, in
their official capacities as Members of the Health Facilities Council; Brenda
Perrin, in their official capacities as Members of the Health Facilities Council;
Harold Miller, in their official capacities as Members of the Health Facilities Council

*Defendants - Appellees*

------------------------------

Docs 4 Patient Care Foundation

*Amicus on Behalf of Appellant(s)*

Iowa Hospital Association

*Amicus on Behalf of Appellee(s)*

_____

Submitted: January 15, 2020
Filed: April 14, 2020
_____

Before COLLOTON, SHEPHERD, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Appellants are health care providers and their patients who sued members of Iowa's Department of Public Health and its Health Facilities Council, alleging that Iowa's Certificate of Need laws violate the Fourteenth Amendment's Due Process, Equal Protection, and Privileges and Immunities Clauses. The district court[1] dismissed the Privileges and Immunities claim as foreclosed by the Slaughter-House Cases and granted summary judgment in favor of Appellees on the remaining claims. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## I. Background

Appellant Lee Birchansky, M.D., ("Birchansky") is an ophthalmologist and organizing member of Fox Eye Surgery, LLC ("Fox Eye") who offers outpatient eye surgeries. Appellant Korver Ear Nose and Throat, LLC ("Korver ENT") provides outpatient ear, nose, and throat surgeries (Birchansky, Korver ENT, and Fox Eye are collectively referred to as "medical providers"). Appellant Michael Jensen is a patient of Birchansky and Fox Eye while appellant Michael Driesen is a Korver ENT

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

patient (Jensen and Driesen are collectively referred to as "the patients").  Appellants alleged in their complaint a facial and as applied challenge to Iowa's Certificate of Need ("CON") requirement for outpatient surgery centers and its capital expenditure exemption claiming the provisions violate the Fourteenth Amendment.  Their arguments on appeal focus on their as applied challenge.

In order to provide a new or changed institutional health service in Iowa it is necessary to obtain a CON from the Iowa Department of Public Health.  Iowa Code § 135.63(1).  Outpatient surgery qualifies as an institutional health service and opening a new outpatient surgery center requires a CON.  See Iowa Code § 135.61(14)(d).  New hospitals are also required to obtain a CON.  See Iowa Code § 135.61(14)(a).  The CON application process is long, expensive, and adversarial.  A party submits an application and fee after which a hearing is held before the Iowa Health Facilities Council where the applicant is required to establish a need for the services he or she intends to offer.  Existing businesses are allowed to appear at the hearing and oppose the issuance of a CON.  After deliberation the Iowa Health Facilities Council will approve or deny the application.[2]  Any party who appeared at the hearing may appeal.  Expensive and recurring fines are imposed for operating an outpatient surgical facility without a CON.

Relevant to this case are two exemptions to Iowa's CON requirement.  A capital expenditure exemption permits CON-holders to expand or open new facilities without obtaining a new CON if:  (1) the cost to expand or open the facility is $1,500,000 or less annually, and (2) the new facility is located either in the facility's existing county or a county contiguous to it.  See Iowa Code § 135.61(18)(c); Iowa

---

[2]The Iowa Health Facilities Council evaluates CON applications according to criteria set forth at Iowa Code § 135.64.  These criteria include the needs of the population the proposed facility will serve and its impact on existing facilities.

Admin. Code r.641–202.1(135).  It follows that once a party has obtained a CON it can expand and build new facilities so long as it complies with the financial and geographic limitations.  A second exemption allows the CON-holder to sell an existing outpatient center to a new party or existing partner.  See Iowa Code § 135.63(2)(o).  The new party may then own and operate the surgery center without obtaining a new CON.

Birchansky was issued a CON to operate Fox Eye in Cedar Rapids in 2017. The process to obtain the CON was extended and difficult.  Birchansky was first denied a CON in 1996.  He then entered into a relationship with St. Luke's Hospital to open and operate Fox Eye.  In 2003 St. Luke's closed the facility without providing a seamless transfer to Birchansky and he was left to apply for a CON to re-open Fox Eye. Birchansky's CON applications were repeatedly denied until 2017.  Birchansky claims these repeated denials were mostly due to opposition from hospitals. Birchansky wants to open another outpatient eye surgery facility in a non-contiguous county without repeating the CON application process.  Hospitals opposing Birchansky's 2017 CON appealed, and at the time of this suit Birchansky believes Fox Eye's future operations are uncertain.

Korver ENT owns a medical office in Orange City, Iowa, and wants to build a surgery center in its current building to perform outpatient ear, nose, and throat surgeries.  Korver ENT does not have a CON for the proposed facility.  Korver ENT alleges it is financially and logistically prepared to construct the outpatient surgery center, but it will not risk moving forward because of the expensive, daunting, and uncertain CON application process.

The patients seek to access the medical providers' outpatient surgery facilities because they believe they will receive more personalized care at lower cost.  They both have established relationships with the medical providers.  Jensen received outpatient surgery services at Fox Eye when Birchansky operated it in partnership

-4-

with St. Luke's Hospital.  After Fox Eye closed, Jensen received eye surgery from Birchansky at Mercy Medical Center, a full-service hospital.  Jensen disliked the impersonal setting of a hospital and prefers to receive future surgeries from Birchansky at an outpatient surgery center.  Driesen is a patient of Korver ENT and received sinus surgery from its physicians at Sioux Center Health Hospital.  For that surgery, Driesen paid a $7,148 facility fee.  Korver ENT projects a $1,500 facility fee for the same surgery at its proposed outpatient surgery center.  Driesen would like to receive future surgeries at Korver ENT's proposed outpatient surgery facility because it would be more affordable.

Appellants commenced this action in the district court, alleging the CON requirement and capital expenditure exemption violate the Fourteenth Amendment. The medical providers allege that the CON laws:  (1) infringe their right to provide approved medical services in violation of the Due Process Clause; (2) violate the Privileges and Immunities Clause by denying their right to earn a living; and (3) violate the Equal Protection Clause through disparate treatment of CON-holders and non-CON-holders, particularly through the capital expenditure exemption.  The patients allege that by hindering or effectively prohibiting the operation of new outpatient surgery centers, Iowa's CON requirement denies them access to approved legal medical care in violation of the Due Process Clause of the Fourteenth Amendment.

This appeal follows the district court's dismissal of the Privileges and Immunities claim and grant of summary judgment in favor of the state defendants on all other issues.

## II. Analysis

### A. Privileges and Immunities

We review the grant of a motion to dismiss for failure to state a claim *de novo*. Chase v. First Fed. Bank of Kansas City, 932 F.3d 1158, 1160 (8th Cir. 2019). Appellants have raised the Privileges and Immunities Clause claim solely to preserve it for appellate review. They concede this claim is foreclosed by the Supreme Court's decision in the Slaughter-House Cases, 83 U.S. 36 (1872). Because the Slaughter-House Cases is binding precedent, we affirm the dismissal of this claim.

### B. Due Process and Equal Protection

We review the grant of summary judgment *de novo*, examining the record in the light most favorable to the nonmovant. Meier v. St. Louis, 934 F.3d 824, 827 (8th Cir. 2019).

We first consider the patients' argument that the district court should have applied strict scrutiny review to their due process claim. Strict scrutiny is applied when the challenged state law infringes on a fundamental right. Washington v. Glucksberg, 521 U.S. 702, 721 (1997). If we are considering a right that has not been previously declared fundamental, we are required to carefully and narrowly describe the right under consideration to avoid recklessly breaking new ground. See Reno v. Flores, 507 U.S. 292, 302 (1993). We then decide whether the specific right is one "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty or justice would exist if [it is] sacrificed." Glucksberg, 521 U.S. at 720–21 (cleaned up). If the right is fundamental, it may not be infringed unless the infringement is narrowly tailored to serve a compelling government interest. Id. at 721.

The patients describe the right at issue as the right to "seek approved medical treatment from licensed providers." This is neither a carefully nor narrowly described right. The patients admit they have accessed and may continue to access the same procedures and services from licensed physicians, including Birchansky, at a hospital or CON-holding outpatient surgery center. They simply desire a preferred physician and treatment location. The right they assert is more carefully and accurately described as "the right to receive treatment from a particular provider at a particular facility."

As accurately described, the right is not deeply rooted in our national history. The patients point to two binding cases to support their claim of a fundamental right. In Cruzan v. Dir., Mo. Dep't of Health, the Supreme Court assumed for the sake of analysis that competent patients have a constitutionally-protected right to refuse life-extending nutrition and hydration. 497 U.S. 261, 279 (1990). The patients argue Cruzan supports their right to a particular medical service. But Cruzan, in acknowledging a liberty interest in refusing unwanted medical treatment, relied on a deeply-rooted national history of protecting patients from forced medication and requiring informed consent prior to treatment. See id. at 269–70, 277–78. The Court did not recognize a patient's right to a specific treatment location or physician. It is noteworthy that the Court declined to infer an affirmative right to assisted suicide from Cruzan. See Glucksberg, 521 U.S. at 725–26, 735. Only a very strained reading of Cruzan could lead to a conclusion that it protects a patient's broad right to dictate the location and provider of a given medical procedure. We decline to embrace such a reading.

The patients also argue that this court's holding in Planned Parenthood of Greater Iowa, Inc. v. Atchison has already determined the right to specific health services is fundamental and that Iowa's CON regime cannot survive strict scrutiny. 126 F.3d 1042, 1048–49 (8th Cir. 1997). Such a reading of Atchison is flawed. Atchison is inapposite because it considered whether Iowa CON laws as applied were

-7-

unconstitutional because the CON requirement operated to restrict access to facilities offering pregnancy termination services. See id. at 1049. This court decided in Atchison that the application of the CON requirement placed an undue burden on an already-established fundamental right to abortion where clinics were subject to CON review only because they provided pregnancy termination services. Id. at 1048–49 (citing Planned Parenthood of Se. Penn. v. Casey, 505 U.S. 833, 878 (1992)). Here the patients assert no previously-enunciated fundamental right; rather, they seek to have us take Atchison out of its context and apply strict scrutiny simply because this court has applied strict scrutiny to the Iowa CON regime under completely dissimilar circumstances. We apply rational basis review to the CON regime and capital expenditure exemption.

We will uphold a state law that does not draw a suspect classification or restrict a fundamental right against an equal protection or substantive due process challenge if it is rationally related to a legitimate state interest. F.C.C. v. Beach Comms., Inc., 508 U.S. 307, 313 (1993); Kansas City Taxi Cab Drivers Ass'n, LLC v. City of Kansas City, 742 F.3d 807, 809 (8th Cir. 2013). "Where there are plausible reasons for [the legislature's] action, our inquiry is at an end." F.C.C., 508 U.S. at 313–14 (quotation marks omitted). The law's rational relation to a state interest need only be conceivable, and supporting empirical evidence is unnecessary. Id. at 315. We are not required to consider the legislature's stated purpose as long as the law could rationally further some legitimate government purpose. Id.; Kansas City Taxi Cab Drivers Ass'n, 742 F.3d at 809.

Since all hospitals are required to have a CON, it necessarily follows that the CON requirement protects existing hospitals from unlimited new competition. We have previously determined that insulating existing entities from new competition in order to promote quality services and protect infrastructural investment can survive rational basis review. Kansas City Taxi Cab Drivers Ass'n, 742 F.3d at 809 (determining Missouri law's preference for full-service taxi companies was a means

rationally related to the legitimate state aim of promoting quality taxi service and infrastructural investment). Here, Iowa could rationally conclude that its full-service hospitals would be at risk if its regulatory scheme allowed competitors to cherry pick more lucrative medical services like outpatient surgery. Full-service hospitals are required to provide potentially costly medical services, like emergency care, often at a loss. See, e.g., 42 U.S.C. § 1395dd (requiring hospitals to provide emergency care regardless of patient's ability to pay). The parties do not dispute that outpatient surgeries are profitable. Indeed, Birchansky testified that he was able to keep rural hospitals financially afloat by performing outpatient surgeries for them. One of the patients' central complaints about obtaining outpatient surgery from hospitals is high facility fees. It is rational to theorize that these higher facility fees are necessary to help full-service hospitals cover services they perform at a loss. Iowa can rationally conclude that protecting hospitals from competition in profitable areas of practice promotes full-service hospital viability. We find that Iowa's CON requirement is rationally related to a legitimate state interest in full-service hospital viability.

Appellants argue that the capital expenditure exemption from the CON requirement fosters unconstitutional disparate treatment by arbitrarily distinguishing between non-hospital CON-holders and potential new entrants to the outpatient surgery market, negating the CON requirement's rational relationship to hospital viability. It is true that the capital expenditure exemption can benefit non-hospital CON-holders by allowing them to open new outpatient surgery centers for less than $1,500,000 while forcing a new entrant to acquire a CON. We note that some degree of imprecision is constitutionally permissible under rational relationship review. Dandridge v. Williams, 397 U.S. 471, 485-87 (1970).

States are not required to "choose between attacking every aspect of a problem or not attacking the problem at all." Id. at 486-87. A law supported by some rational basis does not offend the constitution merely because it is imperfect, mathematically imprecise, or results in some inequality. Id. at 485. Even though some non-hospital

CON-holders will benefit from the capital expenditure exemption, this does not sever the CON requirement's rational relationship to full-service hospital viability. Requiring Iowa to protect hospitals from competition only if it protects them from *all* potential competitors is inconsistent with our precedent. See United Hosp. v. Thompson, 383 F.3d 728, 733 (8th Cir. 2004) ("The solution provided, while incomplete, more than satisfies the rational basis test. The perfect must not become the enemy of the good."). The CON requirement rationally shields all full-service hospitals from non-CON-holder competition and limits new entrants to the profitable outpatient surgery market, to the conceivable benefit of Iowa's existing hospitals.

Iowa could plausibly permit a limited amount of competition through the capital expenditure exemption consistent with its purpose of maintaining full-service hospital viability. Limited competition conceivably advances the very areas Appellants are concerned with: reduced patient costs, innovative procedures, and better service. It is rational for Iowa to have intended the capital expenditure exemption to strike a balance between protecting full-service hospitals and allowing limited competition to promote continual improvement in hospital services. The financial and geographic limitations are consistent with this reasoning.

Iowa's decision to exempt competitors who are non-hospital CON-holders is rationally related to its interest in protecting the viability of full-service hospitals. As the medical providers have argued, the process to obtain a CON is long and adversarial. Existing hospitals may challenge and are frequently successful in their opposition to the issuance of a CON. Every non-hospital CON-holder obtained its CON either through a process permitting hospital input or by partnering with a hospital. Only five outpatient surgery facilities unaffiliated with a hospital received CONs from 2000 to the time of Appellants' suit, and hospital opposition appears to increase the likelihood of a CON denial. Non-hospitals essentially enter the competitive outpatient surgery market by partnering with a hospital or through hospital acquiescence, absent the rare case of a hospital-opposed CON grant. Even

-10-

when a CON is granted despite hospital opposition, as Birchansky's was, hospitals may appeal. This degree of hospital influence on which non-hospitals compete under the capital expenditure exemption undermines Appellants' claim and bolsters the CON requirement's rational relation to a legitimate state interest in maintaining full-service hospital viability.

## III. Conclusion

For the foregoing reasons, we affirm the district court's orders dismissing Appellants' Privileges and Immunities claim and granting summary judgment in favor of the state defendants on the remaining claims.

—————————————————