# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2268

_____

Crista Eggers; Nebraskans for Medical Marijuana, NMM

*Plaintiffs - Appellees*

v.

Robert B. Evnen

*Defendant - Appellant*

------------------------------

State of Arkansas; State of Alabama; State of Alaska; State of Florida; State of Idaho; State of Indiana; State of Louisiana; State of Missouri; State of Montana; State of North Dakota; State of Ohio; State of Oklahoma; State of South Carolina; State of Utah; State of West Virginia; Nebraska Agricultural Legal Foundation; Nebraska Cattlemen; Nebraska Corn Growers Association; Nebraska Farm Bureau Federation; Nebraska Pork Producers Association; Nebraska Soybean Association; Nebraska State Dairy Association; Nebraska Wheat Growers Association; We Support Agriculture

*Amici on Behalf of Appellant(s)*

Raise the Wage Nebraska

*Amicus on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the District of Nebraska - Lincoln
_____

Submitted: August 9, 2022
Filed: August 31, 2022
_____

Before GRUENDER, KELLY, and STRAS, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Crista Eggers and Nebraskans for Medical Marijuana ("NMM"), a registered Nebraska ballot campaign committee, challenged as contrary to the Equal Protection Clause a provision in the Nebraska constitution that establishes a signature requirement for ballot initiatives. The district court entered a preliminary injunction barring the Nebraska Secretary of State from enforcing the provision. The Secretary appeals, and we reverse.

**I.**

The Nebraska constitution gives voters the power directly to enact statutes and constitutional amendments placed on the general-election ballot. Neb. Const. art. III, § 2. To qualify for placement on the ballot, a proposed statute or constitutional amendment must satisfy two conditions. First, at least seven percent (in the case of a proposed statute) or ten percent (in the case of a proposed constitutional amendment) of registered voters must sign a ballot petition. *Id.* Second, the signatories must "be so distributed as to include five percent of the registered voters of each of two-fifths of the counties of the state." *Id.*

This case concerns the second requirement (the "signature distribution requirement"). On September 2, 2021, NMM initiated petitions to place proposals to legalize marijuana for medical and recreational purposes on the November 2022 ballot. Eggers is a paid contractor, volunteer, and sponsor of NMM. On May 16, 2022, Eggers and NMM sued the Nebraska Secretary of State in federal court. As relevant here, the plaintiffs claimed that the signature distribution requirement

-2-

violated Eggers's rights under the Equal Protection Clause because it devalued her signature relative to the signatures of citizens in less populous counties. The plaintiffs sought a declaration that the signature distribution requirement is unconstitutional on its face and an injunction against its enforcement.

The same day they filed their complaint, the plaintiffs moved for injunctive relief. The district court granted the motion and entered a preliminary injunction barring the Secretary from enforcing the signature distribution requirement. Invoking this court's interlocutory jurisdiction under 28 U.S.C. § 1292(a)(1), the Secretary appealed. We granted the Secretary's request for a stay pending appeal and the plaintiffs' request for expedited briefing, and we now turn to the merits of the appeal.

## II.

We review the grant of a preliminary injunction for abuse of discretion, examining factual findings for clear error and legal conclusions *de novo*. *Sleep Number Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022). The factors that determine whether the movant is entitled to a preliminary injunction are "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest." *Id.* (brackets omitted). The balance-of-harms and public-interest factors "merge when the Government"—or, in this case, a state official in his official capacity—"is the [nonmoving] party." *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (establishing this principle in the stay context); *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021) (applying the principle to preliminary injunctions); *Roman v. Wolf*, 977 F.3d 935, 940-41 (9th Cir. 2020) (same); *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020) (same); *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020) (same).

We begin with the probability-of-success factor. Ordinarily, the movant must show only a "fair chance" of success on the merits. *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019). But "where a preliminary injunction is sought to enjoin . . . government action based on presumptively reasoned democratic processes," the movant must show that he "is likely to prevail on the merits." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732-33 (8th Cir. 2008) (en banc). State and federal statutes are the output of "presumptively reasoned democratic processes." *Id.* at 732 & n.6. We need not decide here whether the same is true of the signature distribution requirement, a state constitutional provision, because the plaintiffs have not shown even a "fair chance" of success. *See id.* at 732-33 (characterizing the likely-to-prevail standard as "more rigorous" than the fair-chance standard).

An equal-protection challenge to a state law triggers rational-basis scrutiny unless the law "draw[s] a suspect classification or restrict[s] a fundamental right." *Birchansky v. Clabaugh*, 955 F.3d 751, 757 (8th Cir. 2020). The plaintiffs do not claim that the signature distribution requirement draws a suspect classification. But they do contend that the signature distribution requirement restricts a fundamental right.

The plaintiffs' contention is foreclosed by circuit precedent. No right can qualify as "fundamental" for purposes of equal-protection analysis unless it is guaranteed by the U.S. Constitution. *See id.* at 756 (adopting for purposes of equal-protection analysis the definition of "fundamental right" in *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)); *Glucksberg*, 521 U.S. at 720-21 (indicating that all rights satisfying this definition are guaranteed by the U.S. Constitution). And we have repeatedly stated that the right to place initiatives on the state ballot "is not a right guaranteed by the United States Constitution, but is a right created by state law." *Miller v. Thurston*, 967 F.3d 727, 737 (8th Cir. 2020); *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997); *accord Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 937-38 (7th Cir. 2018); *Kendall v. Balcerzak*, 650 F.3d 515, 523-24 (4th Cir. 2011); *Molinari v. Bloomberg*, 564 F.3d

-4-

587, 597 (2d Cir. 2009); *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210-11 (10th Cir. 2002); *Biddulph v. Mortham*, 89 F.3d 1491, 1500 (11th Cir. 1996); *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 296 (6th Cir. 1993); *cf. John Doe No. 1 v. Reed*, 561 U.S. 186, 212 (2010) (Sotomayor, J., concurring) ("[Initiatives and referenda] are not compelled by the Federal Constitution. It is instead up to the people of each State . . . to decide whether and how to permit legislation by popular action. States enjoy considerable leeway . . . to specify the requirements for obtaining ballot access . . . ." (internal quotation marks omitted)). *Contra Idaho Coal. United for Bears v. Cenarrusa*, 342 F.3d 1073, 1077 & n.7 (9th Cir. 2003). In fact, we have applied this principle to the very provision at issue here, distinguishing the "right to vote in an election of political representatives," which we recognized is "fundamental," from the right burdened by the signature distribution requirement "to participate in [placing] initiatives and referenda" on the ballot, which we held is "state-created" and thus "nonfundamental." *See Bernbeck v. Gale*, 829 F.3d 643, 645, 648 n.4 (8th Cir. 2016) (citing *Dobrovolny*, 126 F.3d at 1113) (relying on this distinction to defend the court's jurisdictional holding).

Because the signature distribution requirement "does not draw a suspect classification or restrict a fundamental right," the plaintiffs must show that it cannot survive even rational-basis scrutiny. *See Birchansky*, 955 F.3d at 757. Rational-basis scrutiny is a "highly deferential" standard, *DeCrow v. N.D. Workforce Safety & Ins. Fund*, 864 F.3d 989, 992 (8th Cir. 2017), that is met as long as someone could rationally conclude that the law furthers a legitimate government interest, *Birchansky*, 955 F.3d at 757. The plaintiff bears the burden "to negative every conceivable basis which might support" the law. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15 (1993).

The plaintiffs have not shown even a "fair chance" of carrying this burden. *See Rodgers*, 942 F.3d at 455. The Secretary identifies multiple legitimate government interests served by the signature distribution requirement. Here, it is sufficient to discuss just one. The State has a legitimate interest in limiting ballot initiatives to those with a reasonable chance of success so that voters' attention is

not distracted by initiatives without a reasonable chance of success. *See Munro v. Socialist Workers Party*, 479 U.S. 189, 193-94 (1986) (holding in the context of candidate elections that there is "an important state interest" in requiring "a preliminary showing of substantial support in order to qualify for a place on the ballot"); *Jones*, 892 F.3d at 938 (holding that states have a legitimate interest in "[l]imiting the number of referenda" on the ballot because doing so "improves the chance that each will receive enough attention, from enough voters, to promote a well-considered outcome"). A lawmaker could rationally conclude that the signature distribution requirement furthers this interest by weeding out initiatives with a small but concentrated support base. The lawmaker could reason that sponsors who must search for supporters scattered across the state are likely to collect fewer signatures than sponsors of an equally popular initiative with a concentrated support base. Consequently, absent a distribution clause, a minimum signature requirement appropriate for initiatives with a dispersed support base would be too lenient as applied to initiatives with a concentrated support base, resulting in an overcrowded ballot. Whether the distribution clause in article III, section 2 of the Nebraska constitution is the best solution to this problem is not for us to decide. *See United Hosp. v. Thompson*, 383 F.3d 728, 733 (8th Cir. 2004) ("The solution provided, while incomplete, more than satisfies the rational basis test. The perfect must not become the enemy of the good."). What matters is that it is at least a rational solution. *See Bernbeck*, 829 F.3d at 646, 649 n.4 (observing that if the plaintiff challenging the same constitutional provision at issue here had "stated an equal protection cause of action, the required rational basis analysis would have doomed any such claim").

When a plaintiff seeks an injunction against the enforcement of a state statute, the plaintiff's failure to carry his burden on the likelihood-of-success factor is fatal to his case. *Rounds*, 530 F.3d at 737 & n.11. We need not decide here whether to extend this principle to requests for injunctions against the enforcement of state constitutional provisions because the balance of the remaining preliminary-injunction factors weighs in the Secretary's favor anyway. The plaintiffs maintain that they will suffer irreparable harm in the absence of injunctive relief because

damages cannot remedy the dilution of the value of Eggers's signature. But we must balance this harm against the "serious[] and irreparabl[e] harm" that an injunction would inflict on the State by "barring the State from conducting this year's elections pursuant to" a valid provision in its constitution. *See Abbott v. Perez*, 585 U.S. ---, 138 S. Ct. 2305, 2324 (2018). The weight of the State's interest in lawfully managing its elections and the fact that the signature distribution requirement appears not to violate the plaintiffs' legal rights tip the balance of the equities in the Secretary's favor and render an injunction contrary to the public interest. *See We the Patriots*, 17 F.4th at 295-96 (concluding that the plaintiffs failed to show that the balance of the equities and the public interest favored an injunction where the challenged law "further[ed] the State's compelling interest and the Plaintiffs ha[d] not shown a likelihood of demonstrating that their constitutional rights [we]re violated by the [law]"). The fact that the plaintiffs waited until the eleventh hour to raise their time-sensitive election-law claim only tilts the scales further. *See Benisek v. Lamone*, 585 U.S. ---, 138 S. Ct. 1942, 1944-45 (2018) (per curiam) (concluding in an election-law case that "the balance of equities and the public interest tilted against [the plaintiffs'] request for a preliminary injunction" in part because the plaintiffs "could have sought a preliminary injunction much earlier").

On balance, the preliminary-injunction factors clearly weigh in the Secretary's favor. The district court abused its discretion by granting the plaintiffs' request for a preliminary injunction. *See Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994) (holding that "a clear error of judgment" in "weighing [the relevant] factors" constitutes an abuse of discretion for preliminary-injunction purposes).

### III.

For the forgoing reasons, we reverse the district court's judgment granting a preliminary injunction and remand for further proceedings consistent with this opinion.

KELLY, Circuit Judge, dissenting.

Crista Eggers and Nebraskans for Medical Marijuana claim Nebraska's signature distribution requirement violates their rights under the Equal Protection Clause. In reversing the grant of a preliminary injunction in their favor, the court rejects out of hand the claim that the Nebraska initiative process implicates a fundamental right. But in my view, the answer is not so clear-cut.

The court relies on three cases to conclude that circuit precedent precludes plaintiffs' argument. The earliest case is Dobrovolny v. Moore, 126 F.3d 1111 (8th Cir. 1997). That case dealt with Nebraska's signature distribution requirement in the context of a First Amendment challenge and a due process claim under the Fourteenth Amendment. Id. at 1113. In this appeal, however, Eggers and NMM's equal protection claim is at issue. That the court in Dobrovolny declined to recognize a property or liberty interest in the initiative process for purposes of a due process claim is not fatal to the equal protection claim here.

Next, the court relies on Miller v. Thurston, a First Amendment case about the burden of an in-person signature requirement. 967 F.3d 727, 732 (8th Cir. 2020). Miller reiterated that the right to a state initiative process is "not a right guaranteed by the United States Constitution." Id. at 737 (quoting Dobrovolny, 126 F.3d at 1113). But it also acknowledged that "certain rules and requirements related to the [initiative] process may nevertheless implicate the Federal Constitution." Id. (citing Meyer v. Grant, 486 U.S. 414, 428 (1988)). Nothing in Miller forecloses the possibility that the petition process in Nebraska violates the plaintiffs' rights under the Equal Protection Clause.

The third case is Bernbeck v. Gale, 829 F.3d 643 (8th Cir. 2016). True, the plaintiff in Bernbeck also brought an equal protection claim, challenging the same signature distribution requirement as the plaintiffs do here. See id. at 646. But Bernbeck concluded the plaintiff lacked standing, never reaching the merits of his equal protection claim. See id. at 650. In a footnote, the court responded to the

dissent's concerns, making a point that "highlight[ed] the tenuous nature of Bernbeck's equal protection claim, *were we to reach the merits*." Id. at 648 n.4 (emphasis added). The court did not—and did not need to—resolve the equal protection claim, and its commentary concerning it is not binding precedent. See Sanzone v. Mercy Health, 954 F.3d 1031, 1039 (8th Cir. 2020) ("[W]e need not follow dicta." (quoting John Morrell & Co. v. Local Union 304A of United Food & Com. Workers, 913 F.2d 544, 550 (8th Cir. 1990))). In short, this circuit's precedents do not foreclose plaintiffs' claim that the initiative process, and Nebraska's signature distribution requirement, implicate a fundamental right to vote.

The district court relied on Moore v. Ogilvie, 394 U.S. 814 (1969), for the premise that access to the ballot is a right protected by the Fourteenth Amendment. At issue in Moore was an Illinois statute requiring independent candidates to provide an "aggregate total of 25,000 signatures" including "the signatures of 200 qualified voters from each of at least 50 counties" in order to qualify for the ballot. Id. at 815. The Court held that because the requirement "discriminates against the residents of the populous counties of the State in favor of rural sections" it "lacks the equality to which the exercise of political rights is entitled under the Fourteenth Amendment." Id. at 819. The Court explained:

> The use of nominating petitions by independents to obtain a place on the Illinois ballot is an integral part of her elective system. All procedures used by a State as an integral part of the election process must pass muster against the charges of discrimination or of abridgment of the right to vote.

Id. at 818 (citations omitted). The Court has reaffirmed that the right to access the ballot is subject to equal protection guarantees. Ill. State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 184 (1979).

Moore addressed nominating petitions for political candidates, but the importance of the ability to access the ballot rationally extends to the initiative process as well. The initiative power in Nebraska is the "first power reserved by the

-9-

people." Neb. Const. art. III, § 1. It is an "integral part of the election process" that the Court discussed in <u>Moore</u>, and the most direct form of democracy granted to the citizens of the state. <u>See</u> Neb. Const. art. III, §§ 1-2. When access to the ballot is circumscribed by a discriminatory rule, the right of voters to express their political preferences is damaged. <u>See</u> <u>Ill. State Bd. of Elections</u>, 440 U.S. at 184; <u>see also</u> District Ct. Op. 12, ECF No. 23 ("The Court is hard-pressed to see a principled distinction between ballot access for a new political party and ballot access for a political initiative.")

Also inherent in the right described by the Court in <u>Moore</u> is the right to have each vote count equally. 394 U.S. at 818-19. The Court explained regarding the Illinois law:

> This law applies a rigid, arbitrary formula to sparsely settled counties and populous counties alike, contrary to the constitutional theme of equality among citizens in the exercise of their political rights. The idea that one group can be granted greater voting strength than another is hostile to the one [person], one vote basis of our representative government.

<u>Id.</u> With the initiative process, the voters of Nebraska have reserved legislative power to themselves. <u>See</u> Neb. Const. art. III, §1; <u>see also</u> <u>State ex rel. Stenberg v. Moore</u>, 258 Neb. 199, 210-11 (1999) ("[T]he Legislature and the electorate are concurrently equal in rank as sources of legislation."). The initiative petition is a form of legislating, and voters' right to equality in the process should be protected as such. <u>See</u> <u>Reynolds v. Sims</u>, 377 U.S. 533, 560-61 (1964) ("[T]he fundamental principle of representative government in this country is one of equal representation for equal numbers of people."). Eggers is undoubtedly burdened as a voter because her signature on the petition carries less weight than that of a voter in a less-populous county.

Other courts have applied <u>Moore</u> to state initiative requirements. <u>See</u> <u>Idaho Coal. United for Bears v. Cenarrusa</u>, 342 F.3d 1073, 1076 (9th Cir. 2003)

-10-

(addressing a similar Idaho law and concluding the ballot initiative, as a "basic instrument of democratic government," cannot be so burdened (quoting City of Cuyahoga Falls v. Buckeye Cmty. Hope Found., 538 U.S. 188, 196 (2003))); ACLU of Nev. v. Lomax, 471 F.3d 1010, 1013, 1021 (9th Cir. 2006) (holding rule requiring fixed percentage of petition signatures from fixed number of counties in Nevada, favoring residents of sparsely populated areas over residents of densely populated areas, violates the Equal Protection Clause of the Fourteenth Amendment); Lemons v. Bradbury, 538 F.3d 1098, 1103 (9th Cir. 2008) ("[R]egulations on Oregon's referendum process implicate plaintiffs' fundamental right to vote."); Mont. Pub. Int. Rsch. Grp. v. Johnson, 361 F. Supp. 2d 1222, 1228 (D. Mont. 2005); Gallivan v. Walker, 54 P.3d 1069, 1095-96 (Utah 2002).

The plaintiffs have persuasively argued that Nebraska's signature distribution requirement may restrain the fundamental right to vote, thus triggering heightened scrutiny review. See Harper v. Va. State Bd. of Elections, 383 U.S. 663, 670 (1966) (strict scrutiny is appropriate where "classifications . . . might invade or restrain" those "fundamental rights and liberties . . . asserted under the Equal Protection Clause"). And the Secretary's arguments in favor of the signature distribution requirement do not survive strict scrutiny. "[T]he States are required to insure that each person's vote counts as much, insofar as it [i]s practicable, as any other person's." Hadley v. Junior Coll. Dist. of Metro. Kan. City, 397 U.S. 50, 54 (1970). Nebraska's requirements discriminate against voters in more populous counties in precisely the same manner as the Illinois state law struck down in Moore, a violation of the one person, one vote principle.

The Secretary claims, and the court accepts, that there should be a distinction between the right to vote for a political representative and the right to vote on an initiative, the latter right granted only by the states and thus not guaranteed by the Federal Constitution. But the right addressed in Moore included the right to vote for presidential electors, a right not guaranteed by the Federal Constitution but instead granted by the states. See Moore, 394 U.S. at 815; Bush v. Gore, 531 U.S. 98, 104 (2000) ("The individual citizen has no federal constitutional right to vote for electors

for the President of the United States."). This distinction, therefore, cannot be dispositive. See Bush, 531 U.S. at 104-05 ("Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."); see also San Antonio Indep. Sch. v. Rodriguez, 411 U.S. 1, 35 n. 78 (recognizing that "the right to vote, per se, is not a constitutionally protected right," but is "shorthand" for "the protected right, implicit in our constitutional system, to participate in state elections on an equal basis with other qualified voters whenever the State has adopted an elective process for determining who will represent any segment of the State's population"). In any event, the Supreme Court has not expressly limited the "right to vote" in the way the court does today.[1] If the right to vote is fundamental, I see no reason why it should not apply equally to the initiative process at the heart of Nebraska's electoral and legislative system.

Because the plaintiffs demonstrated likely success on the merits, see Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 732-33 (8th Cir. 2008) (en banc) (requiring a showing that movant is "likely to prevail on the merits" when seeking to enjoin state statutes), the balance of the preliminary injunction factors tips in their favor. The district court concluded that the plaintiffs demonstrated irreparable harm. The loss of ability to access the ballot and vote for the measure in the upcoming election is just the sort of "deprivation[] of temporally isolated opportunit[y]" that "preliminary injunctions are intended to relieve." D.M. by Bao Xiong v. Minn. State High School League, 917 F.3d 994, 1003 (8th Cir. 2019). The balance of harms and public interest also squarely support the grant of the injunction. See Nken v. Holder, 556 U.S. 418, 435 (2009) (merging third and fourth preliminary injunction factors when the government is the opposing party). "The public is served by the preservation of constitutional rights." D.M., 917 F.3d at 1004 (cleaned up) (quoting Phelps-Roper v. Nixon, 545 F.3d 685, 694 (8th Cir. 2008)). By contrast, any harm to the Secretary in having to accept a petition that satisfies all conditions

---

[1]That the Court will hear arguments in Moore v. Harper, 142 S. Ct. 2901 (2022) in the upcoming term, concerning the independent state legislature doctrine, confirms that there are undecided questions about state regulation of elections.

but the signature distribution requirement is minimal.  Overall, the factors strongly support the district court's ruling.

Because the Secretary has not shown the district court abused its discretion in issuing the preliminary injunction, I respectfully dissent.

_____